Lawrence D. Rosenberg
(*pro hac vice application to be filed*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001.2113
Telephone: +1.202.879.3939
Facsimile:  +1.202.626.1700
ldrosenberg@jonesday.com

Alexis Adian Smith (Cal. Bar No. 274429)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071.2452
Telephone: +1.213.489.3939
Facsimile:  +1.213.243.2539
asmith@jonesday.com

Attorneys for Petitioner
Lufthansa Technik AG

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Application of LUFTHANSA TECHNIK AG, Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery, Pursuant to the Federal Rules of Civil Procedure, of Respondent Thales Avionics, Inc., for Use in Foreign Proceedings | Case No. <br><br> APPLICATION FOR DISCOVERY IN AID OF FOREIGN LITIGATION PURSUANT TO 28 U.S.C. § 1782 <br><br> ORAL ARGUMENT REQUESTED |

Petitioner Lufthansa Technik AG ("Lufthansa") makes this application for an order pursuant to 28 U.S.C. § 1782 authorizing its attorneys to issue subpoenas, pursuant to Federal Rule of Civil Procedure 45, upon Thales Avionics, Inc. ("Thales"), compelling it to produce documents and provide testimony, pursuant to Federal Rule of Civil Procedure 30, for use in Civil Law Proceeding No. 7 O 289/10 (Mannheim Regional Court), currently pending in Germany ("the German Action"), as well as in similar proceedings currently pending in the United Kingdom and France and contemplated proceedings in Spain and Japan.

**JURISDICTION**

1.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as it arises under Federal law—specifically 28 U.S.C. § 1782.  *See United Co. Rusal PLC v. Trafigura A.G.*, No. 3:11mc17 (SRU), 2011 WL 1045532 (D. Conn. Mar. 16, 2011).

**THE GERMAN ACTION**

2.     On December 29, 2010, Lufthansa initiated the German Action in a district court in Mannheim, Germany (the "Mannheim Court"), to stop Astronics Advanced Electronic Systems ("AES"), from infringing Lufthansa's European Patent No. EP 881 145 and its German publication No. DE 598 10 238 (collectively, "EP 145 Patent").  (Attachment 1, Declaration of Gerd Jaekel ("Jaekel Decl.") at ¶ 11.)

3.     By that civil action, Lufthansa sought an injunction to stop any further harm from AES's infringement and to obtain damages for AES's past infringement.  (*Id.* ¶ 12.)

4.     On June 20, 2011, AES served Lufthansa with a formal response to the complaint, giving Lufthansa notice of AES's defenses in the German Action.  (*Id.* ¶ 13.)  AES disputed Lufthansa's infringement claims arguing that many of the accused power supplies do not satisfy all of the claim limitations in EP 145 Patent.  (*Id.* ¶ 14.)  AES also asserted a defense based on the license granted to DaimlerChrysler Aerospace Airbus GmbH K.I.D. Systeme, now known as K.I.D. Systeme GmbH ("K.I.D.")  (*Id.* ¶ 15.)

5.     German patent cases are typically bifurcated so that infringement issues and invalidity issues are decided by different courts.  (*Id.* ¶ 16.)  Lufthansa's case was bifurcated in this manner.  (*Id.*)  In particular, on June 17, 2011, AES initiated nullity proceedings challenging the validity of the EP 145 Patent in the Federal Patent Court.  (*Id.*)  The Mannheim Court retained jurisdiction over the infringement portion of the case.  (*Id.*)

APP. FOR DISCOVERY PER 28 U.S.C. § 1782

6. On November 14, 2011, the Mannheim Court stayed the infringement action until the Federal Patent Court rendered a decision regarding AES's nullity arguments. (*Id.* ¶ 17.)

7. On December 18, 2013, the Federal Patent Court decided mostly in Lufthansa's favor. (*Id.* ¶ 18.) In particular, it held that a combination of the challenged claims regarding the EP 145 Patent was valid. (*Id.*) On November 9, 2016, AES withdrew its appeal at the Federal Supreme Court, so that the decision as to validity has now become final. (*Id.*)

8. On February 6, 2015, the Mannheim Court held that AES had infringed the EP 145 Patent and rejected AES's infringement defenses. (*Id.* ¶ 19.) On November 14, 2016, the Karlsruhe Higher Regional Court affirmed this decision and decided that a further appeal to the Federal Supreme Court should not be certified. (*Id.*) AES filed a petition seeking leave to appeal to the German Federal Supreme Court with respect to the scope of information for infringing EmPower parts predating January 1, 2017. (*Id.*) In March 2019, the German Federal Supreme Court rendered its decision rejecting AES's arguments and holding that Lufthansa is entitled to ask for any and all damages incurred by AES's infringement as far back as December 26, 2003.

9. At present, Lufthansa's damages claim is ripe in the German Action. Lufthansa is actively pursuing the damages issue in the Mannheim Court. (*Id.* ¶ 20.) Indeed, Lufthansa's brief on the damages issue is due in July 2019, and there is a hearing scheduled for September 2019 on the issue.

10. Lufthansa brings this Application to discover evidence to support its claim for damages from AES in Germany.

## ACTIONS IN THE UNITED KINGDOM AND FRANCE

11. A European patent must be enforced in each designated state independently. (*Id.* ¶ 40.) In addition to Germany, Lufthansa's EP 145 Patent is in force in France, Spain, and the United Kingdom. (*Id.*) Lufthansa also owns a

1  patent similar in scope to the EP 145 Patent in Japan (Patent No. JP 38888704 B2).
2  (*Id.*)  Lufthansa has suspected the possibility that AES has shipped its infringing
3  product to these other countries as well.  (*Id.* ¶ 41.)  Lufthansa has not been able to
4  obtain all relevant evidence of those potential sales, however, and, without such
5  evidence, it cannot reasonably protects its rights in those countries.  (*Id.*)

6          12.     In the German proceedings, AES has denied that it knew where parts
7  delivered to in-flight entertainment system manufacturers ultimately went and has
8  asserted that there is no proof that infringing items were assembled in Germany
9  after being received by two German seat manufacturers.  (*See id.* ¶ 20)  AES has
10  even suggested that the parts of the EmPower system could have been used for
11  purposes other than being combined into the infringing system.  (*See id.*)  Under
12  German law, however, the seller of infringing system components is liable for
13  patent infringement if it knew or should have known that some of those parts would
14  be assembled into patent-infringing systems in Germany, even if those parts were
15  sold to intermediate foreign parties.  (*See id.*)  Moreover, the seller's liability in
16  such cases extends back to the time of its first knowledge of the respective facts.
17  (*Id.*)

18          13.     Lufthansa has already initiated actions in France and the United
19  Kingdom to enforce its patent rights.  (Attachment 2, Declaration of Thomas
20  Bouvet ("Bouvet Decl.") ¶ 4; Attachment 3, Declaration of Alastair McCulloch
21  ("McCulloch Decl.") ¶ 4.)  Collectively, these actions, along with the German
22  Action, will be referred to as "Pending European Proceedings."

23          14.     Lufthansa brings this Application to discover evidence to support its
24  claim for damages from AES in the Pending European Proceedings.

25          15.     If Lufthansa obtains the requested evidence in this matter and it
26  establishes that AES is committing infringing acts in those countries, Lufthansa
27  reasonably contemplates bringing actions in Spain and/or Japan.  These actions are
28  referred to collectively as the "Contemplated Foreign Proceedings."

1     16.     Lufthansa claims that AES's use of its patented technology has caused

2   it damage in the range of at least tens of millions of euros.  (*Id.* ¶ 25.)

3                         **FACTUAL BACKGROUND**

4     17.     Lufthansa is one of the leading manufacturers and independent

5   providers of maintenance, repair, overhaul, and modification services in the civil

6   aviation industry.  (Jaekel Decl. ¶ 3.)  With tailored maintenance programs and

7   state-of-the-art repair methods, Lufthansa ensures the unbroken reliability and

8   availability of its customers' fleets.  (*Id.*)  Lufthansa is an international organization

9   involved in maintenance, production, and development.  (*Id.*)

10     18.     In the manufacture and marketing of its patented technology,

11   Lufthansa works with its licensee, K.I.D.  (*Id.* ¶ 4.)  K.I.D. manufactures the

12   patented power supplies for use in aircraft cabins under license with Lufthansa, and

13   Lufthansa receives a per-unit royalty from K.I.D. for those power supplies sold by

14   K.I.D.  (*Id.* ¶ 5.)

15     19.     Lufthansa's EP 145 Patent, entitled "Electrical Power Supply Device,"

16   issued on November 26, 2003.  (*Id.* ¶ 7.)  The patent claims technology that, for the

17   first time, enabled a standard household voltage supply to be provided in the cabin

18   of an aircraft to supply electricity to allow passengers to use their laptops or

19   electronic entertainment devices in flight.  (*Id.*)  Before the patented invention,

20   aviation authorities took the view that placing a plug socket in the armset of a

21   passenger seat, for example, posed a safety risk because a passenger might

22   inadvertently insert conductive material into the socket and receive an electric

23   shock.  (*Id.*)  The risk was particularly acute for young travelers, who might insert a

24   sharp object into the plug socket.  (*Id.*)

25     20.     The technology in the patent incorporates safety features to prevent the

26   possibility of electrical shock.  (*Id.* ¶ 8.)  *Specifically*, the patented technology

27   ensures that power is only supplied to a plug socket only if both pins are inserted

28   into the socket simultaneously.  (*Id.*)  Only when two pins are detected in the socket

within a predetermined maximum time (such as 300 milliseconds) will the power supply switch the power on.  (*Id.*)  Thus, if a child, for example, inserted a needle into one side of the plug socket, the power would not be switched on.  (*Id.*)  Even if a child inserted a second needle into the second pole, no power would be switched on, because the two pins would not be detected within the predetermined maximum time. (*Id.*)

21.     Thales is a Delaware corporation, headquartered in Virginia, but it has a corporate office in Irvine, CA, from which it has been known to ship infringing units to Germany.  (*Id.* ¶ 24.)

22.     Thales is a subsidiary of Thales USA Inc., which is, in turn, the principal North American subsidiary of Thales Group.  Among other things, Thales designs, engineers, sells, and installs in-flight entertainment and communications solutions to airlines worldwide for both commercial and private aircraft.  (*Id.* ¶ 22.)

23.     AES sells its 110V in-seat power systems to Thales, among other aircraft-component companies, to be combined with Thales's in-flight entertainment units.  (Jaekel Decl. ¶ 22.)  Many of these Thales units, which include the AES in-seat power systems, are constructed pursuant to specifications from Airbus, Boeing, and other original equipment manufacturers ("OEMs"), for installation on those manufacturers' aircraft in Europe.  (*Id.*)

24.     Many or most of these AES in-seat power systems are delivered to Thales's facility in Irvine, California.  And, as noted previously, Thales has been known to ship its in-flight entertainment systems, which incorporate AES's systems, from this facility.  Accordingly, the documentation of and relating to the sales of AES's in-seat power systems to Thales, as well as the documents of and relating to Thales' sales to other customers, for installation in aircraft in Europe, should be located at the Irvine, California, facility or otherwise in the custody and control of Thales and its employees in that facility.

APP. FOR DISCOVERY PER 28 U.S.C. § 1782

## SECTION 1782 STATUTORY REQUIREMENTS HAVE BEEN MET

25.     Title 28 U.S.C. § 1782 authorizes this Court to order any person in the Central District of California to give testimony and produce documents for use in a foreign proceeding upon the application of any person with an interest in that proceeding.  Specifically, Section 1782(a) provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made . . . upon the application of any interested person and . . . [t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

26.     To obtain discovery in aid of a foreign litigation, a petitioner must show:  (a) that the person to provide discovery resides or is found in the district where the application is made; (b) that the information sought is "for use in a proceeding in a foreign or international tribunal"; and (c) that the petitioner is an "interested person" in the foreign proceeding.  28 U.S.C. § 1782(a); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246 (2004).  Lufthansa satisfies each of these requirements.

27.     *First*, Thales resides in or can be found in this District.  Thales maintains a corporate office in Irvine, California, where many key business functions relating its in-flight entertainment systems are handled.  (*Id.* ¶¶ 22–24.)  On information and belief, the documents that Lufthansa seeks are either located in Irvine, California, or within this Respondent's possession, custody, or control, as those terms are defined in Federal Rule of Civil Procedure 34.

28.     *Second*, the information sought is highly relevant to, and will be used to assist Lufthansa in the pending German Action, similar actions in France and the United Kingdom, and in contemplated parallel actions.  As such actions constitute proceedings in foreign tribunals, the second requirement is met.  *See Intel*, 542 U.S.

1    at 258.

2        29.    *Third*, this application is made by an "interested person."  28 U.S.C.

3    § 1782(a).  Lufthansa is the plaintiff in the Pending European Proceedings.  (*See*

4    Jaekel Decl. ¶ 11.)  Lufthansa will also be the plaintiff if the contemplated actions

5    are initiated in Spain and/or Japan.  Parties to foreign litigation are "interested

6    persons."  *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and

7    may be the most common example of, the 'interested person[s]' who may invoke

8    § 1782[.]"); *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1110-11

9    (9th Cir. 2015) (holding that a party to the foreign proceedings has the requisite

10   "reasonable interest" necessary for judicial assistance pursuant to Section 1782).

11
12
## THE COURT SHOULD EXERCISE ITS DISCRETION AND PERMIT LUFTHANSA TO OBTAIN THE REQUESTED DISCOVERY

13       30.    Once the three statutory factors are satisfied, the district court should

14   determine, in its discretion, whether to order the requested discovery.  *See Intel*, 542

15   U.S. at 264.

16       31.    In *Intel*, the Supreme Court refused to adopt inflexible rules for

17   determining when or to what extent discovery is permissible under Section 1782.

18   Instead, the Court "suggested" factors that the district court could consider in

19   resolving that question.  *See Intel*, 542 U.S. at 247 ("Whether such assistance is

20   appropriate in this case is a question yet unresolved.  To guide the District Court on

21   remand, we suggest considerations relevant to the disposition of that question.").

22       32.    The four factors suggested by the Supreme Court for consideration are:

23   (1) whether "the person from whom discovery is sought is a participant in the

24   foreign proceeding" such that the "foreign tribunal has jurisdiction over [it]";

25   (2) "the nature of the foreign tribunal, the character of the proceedings underway

26   abroad, and the receptivity of the foreign government or the court or agency abroad

27   to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request

28   conceals an attempt to circumvent foreign proof-gathering restrictions or other

APP. FOR DISCOVERY PER 28 U.S.C. § 1782

policies of a foreign country or the United States"; and (4) whether the requests are "unduly intrusive or burdensome," and, if so, whether those requests can be "trimmed." *Intel*, 542 U.S. at 264-65; *see also United States v. Global Fishing, Inc.*, 634 F.3d 557, 563 (9th Cir. 2011) ("*Global Fishing*").

33.    In addition to these suggested factors, the Court should also consider the overarching principles of Section 1782.  "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247.  While this legislation has undergone many amendments, these amendments have steadily and consistently moved the legislation in the singular direction of providing more, not less, discovery for use in more, not fewer, judicial and quasi-judicial forums in connection with more, not fewer, types of proceedings. *See id.* at 248-49.  Indeed, the Seventh Circuit has explained that "a party to litigation in a foreign country can seek discovery relating to that litigation in a federal district court, and, in the discretion of that court, can obtain as much discovery as it could if the lawsuit had been brought in that court rather than abroad." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) ("*Biomet*") (internal citations omitted).

34.    Section 1782 has two aims:  to provide "efficient assistance to participants in international litigation" in our federal courts and to "encourag[e] foreign countries by example to provide similar assistance to our courts. *Intel*, 542 U.S. at 252; *see also Akebia*, 793 F.3d at 1110; *Global Fishing*, 634 F.3d at 563; *Malev Hungarian Airlines v. United Techs. Int'l Inc.*, 964 F.2d 97, 100 (2d Cir. 1992); *Marubeni Am. Corp. v. LBA Y.K.*, 335 F. App'x 95, 96 (2d Cir. 2009) (noting that the district court's discretion should be guided by the twin aims of the statute); *Cryolife, Inc. v. Tenaxis Med., Inc.*, No. C08-05124 HRL, 2009 WL 88348, at *3 (N.D. Cal. Jan. 13, 2009) (granting discovery requested for use in German court because it would be consistent with the twin aims of the statute).

35.     To that end, Section 1782 has been described as a "one-way street" that grants wide assistance to others, but demands nothing in return.  *Malev*, 964 F.2d at 101.  "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance."  *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995); *see also London v. Does 1-4*, 279 F. App'x 513, 515 (9th Cir. 2008) (affirming district court decision to permit Section 1782 discovery because the petitioner showed the discovery would be useful to prove its case in the foreign court).  Indeed, if a court fails to consider this backdrop in analyzing the discretionary Intel factors, it risks abusing its discretion.  *See Malev*, 964 F.2d at 101-02.

36.     Applying these factors and considering the overarching principles behind the statute, this Court should permit Lufthansa to obtain the requested discovery.

## **Thales Is Not A Party**

37.     The first *Intel* factor considers whether a respondent is a participant in the foreign proceedings because, when a respondent is party, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  *Intel*, 542 U.S. at 264.

38.     Thales is a party to the proceedings in France, but, as discussed below, discovery is limited in France for several reasons.  Thales is not a participant in the German Action or in the pending proceedings in the United Kingdom.  As the *Intel* Court explained, this fact demonstrates why Lufthansa needs Section 1782 aid.  *Id.* ("nonparticipants in the foreign proceeding may be outside the foreign tribunal's reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid").  Indeed, a federal court has held that the first *Intel* factor "necessarily favors" the petitioner where the respondent "is not a party to the foreign action."  *Pott*, 945 F. Supp. 2d at 1200.  In addition, Lufthansa will have no

opportunity to seek discovery of the information sought by Application in the pending German Action because that jurisdiction does not have a mechanism that Lufthansa may invoke to obtain any discovery, let alone third-party discovery. (Jaekel Decl. ¶ 27.)  In fact, the German Civil Procedure Code ("ZPO") does not incorporate the concept of discovery as it is understood in U.S. Procedure.  (*Id.* ¶ 29.)

39.    There is a provision in the ZPO, Section 142, that permits a party to request that the other party or a third party be ordered to present a certain, specifically identified document.  (*Id.* ¶ 28.)  But Lufthansa cannot use that provision to obtain the discovery it seeks for at least three reasons.  *First*, to invoke Section 142 ZPO, Lufthansa would be required to identify specifically the document(s) it seeks and justify the request by showing how those specific document(s) would be used to support a claim or defense in the lawsuit; a general request seeking discovery of the internal documents of the other party as evidence for the litigation , no matter how narrowly tailored, would not be sufficient.  (*Id.*)  If the information sought is uniquely within the knowledge and possession of the other party, these hurdles simply cannot be overcome.  (*Id.* ¶ 29.)  *Second*, even if Lufthansa could overcome these hurdles, there is no guarantee that Thales would produce the requested documents in the German Action.  If a party or nonparty chooses not to produce the requested documents pursuant to Section 142 ZPO, there is no mechanism by which the German court can compel production.  (*Id.* ¶ 31.)  Instead, the German court may simply consider that noncompliance in rendering its decision.  (*Id.*)  *Third*, because the documents Lufthansa seeks are located in the United States, they are outside the jurisdictional reach of the German court.  (*Id.* ¶ 30.)

40.    In a case seeking discovery for use in a Venezuelan court, the petitioner was faced with foreign procedural rules that were very similar to those described in Mr. Jaekel's declaration.  *See In re Servicio Pan Americano de*

1   *Proteccion, C.A.*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004).  There, the court

2   granted the petition because, among other things, "the apparent limitations of

3   Venezuelan discovery rules suggest that the exercise of jurisdiction by this court

4   may be necessary to provide Pan Americano with the documents it seeks."  *Id.*

5   41.   Similar hurdles exist in both France and the United Kingdom.  French

6   courts order seizures in France, *not* in the United States, where Thales is located.

7   (*See* Bouvet Decl. ¶ 6.)  Thus, French courts have no power to order discovery of

8   the materials sought here (*i.e.*, materials located in the United States).  (*See id.*)

9   Lufthansa was able to conduct limited seizures in France earlier this year by

10  *assuming* the identities of recipients of the EmPower system and its parts.  (*See id.*)

11  Similar limitations apply in the United Kingdom, where, in any event, courts grant

12  seizure orders with less frequency.  (*See* McCulloch Decl. ¶ 6.)  However, in the

13  United Kingdom, Lufthansa is not yet in a position to assume or guess as to the

14  identities of entities that received the infringing systems or parts.  In addition, in

15  both countries, the seizure proceedings will be limited to evidence relevant to

16  proceedings initiated in that country alone.  Thus, for example, information relevant

17  to the German action will not be accessible to Lufthansa as part of a French seizure

18  proceeding.  Finally, seizure proceedings are less efficient and timely than

19  Section 1782 discovery here, especially where, as here, the entities with relevant

20  information are largely unknown.  Any delay could be problematic for Lufthansa,

21  as the statutes of limitations in France and the United Kingdom permit recovery for

22  acts of infringement that predate the initiation of court proceedings by five and six

23  years, respectively.  (*See* Bouvet Decl. ¶ 12; McCulloch Decl. ¶ 7.)

24  42.   Moreover, even if a mechanism did exist under German or other

25  foreign law to obtain such discovery, Section 1782 does *not* require that Lufthansa

26  invoke that mechanism or exhaust all possible alternatives before seeking discovery

27  in this Court.  *See Intel*, 542 U.S. at 261; *In re O'Keeffe*, 646 F. App'x 263, 268 (3d

28  Cir. 2016) ("We have never held that an applicant must seek discovery relief in the

APP. FOR DISCOVERY PER 28 U.S.C. § 1782

1  foreign forum first."); *In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1115
2  (E.D. Wis. 2004) (rejecting as "inefficient and possibly ineffective" the argument
3  that petitioner should have to seek discovery from the foreign tribunal first).

4        43.    As to the Contemplated Foreign Actions, these proceedings have not
5  yet been filed and it is not clear whether Thales might be a party or would
6  otherwise be subject to producing discovery in those actions.  But, in all events,
7  because "[d]iscovery in the federal court system is far broader than in most (maybe
8  all) foreign countries," *Biomet*, 633 F.3d at 594, it is unlikely that Lufthansa will be
9  able to obtain the discovery it seeks from Thales using foreign discovery
10  procedures in the Contemplated Foreign Proceedings.  And, indeed, it is much more
11  efficient to allow Lufthansa to obtain this discovery now for the Pending European
12  Proceedings and possible use later in Contemplated Foreign Proceedings.  *Procter*
13  *& Gamble Co.*, 334 F. Supp. 2d at 1115.

14        44.    The first *Intel* factor thus weighs in favor of granting Lufthansa's
15  Application.

16        **The Foreign Courts Will Be Receptive To The Discovery**

17        45.    The second *Intel* factor considers the nature of the foreign tribunal and
18  its receptiveness to the requested discovery.  Absent authoritative proof that a
19  foreign tribunal would reject evidence obtained with the aid of Section 1782, this
20  factor weighs in favor of granting a Section 1782 petition.  *See Minatec Fin.*
21  *S.A.R.L. v. SI Grp. Inc.*, No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, at *6-7
22  (N.D.N.Y. Aug. 18, 2008) (granting request for discovery upon finding absence of
23  authoritative declarations from Germany's judiciary, executive, or legislature
24  addressing the use of evidence obtained by Section 1782); *Cryolife*, 2009 WL
25  88348, at *3 (finding no evidence that the German court would be unreceptive to
26  assistance under Section 1782 and granting petition).

27        46.    In fact, the absence of such authoritative proof should end the inquiry.
28  *See Minatec*, 2008 WL 3884374, at *6 ("Although the effort to provide this Court

with th[ese] various perspectives interpreting German law is laudatory, both parties should have known that both the Supreme Court and the Second Circuit have repeatedly denounced such a practice and that such endeavor may be meaningless."). In that event, a court should turn to "the statute's 'overarching interest in providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in the litigation'" in deciding whether to allow the discovery. *Id.*, at *7.

47. German courts generally receive evidence without regard to its origin, how it was obtained, or whether the obtaining was in line with the ZPO, as long as it was not obtained in violation of the basic rights provided in the German constitution. (Jaekel Decl. ¶¶ 26, 33-34.) German legal literature agrees that German law does not preclude using evidence obtained by U.S. discovery procedures in German proceedings. (*Id.* ¶ 33.)

48. Federal courts examining this factor have routinely granted requests to obtain discovery in the United States for use in proceedings pending in Germany. *See, e.g.*, *Biomet*, 633 F.3d at 599 (granting request for discovery under Section 1782 for German trade secret case); *Heraeus Kulzer GmbH v. Esschem, Inc.*, 390 F. App'x 88, 93 (3d Cir. 2010) (vacating order quashing subpoena and remanding with instructions to grant discovery on an expedited basis); *Cryolife*, 2009 WL 88348, at *4 (noting that under Section 1782, one is not "obliged to establish a 'compelling need' for discovery . . . petitioner need only show that the information will be useful"); *Minatec*, 2008 WL 3884374, at *4 ("[I]t is far better to provide federal court assistance than none at all."); *In re Gemeinschaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006) (concluding that the applicant's attempt to acquire discovery it was unable to obtain in Germany was "not an 'impermissible' use of § 1782 because, in some respects, that is precisely the type of assistance that the statute was designed to afford"); *Procter & Gamble Co.*, 334 F. Supp. 2d at 1115 (granting discovery for

use in five foreign proceedings, including one in Germany).

49.     And, indeed, evidence obtained pursuant to Section 1782 has been decisive in German proceedings.  *See In re Heraeus Kulzer GmbH*, No. 3:09-CV-530 RLM-MGG, 2017 WL 214322, at *1 (N.D. Ind. Jan. 18, 2017) (noting that the German court "relied on" documents obtained pursuant to Section 1782 in reaching its judgment); *see also In re Heraeus Kulzer GmbH*, No. 3:09-CV-530 RM, 2015 WL 5613156, at *1 (N.D. Ind. Sept. 22, 2015) (noting that "the German judgment quotes extensively from the cited documents," all of which were produced pursuant to a Section 1782 petition).

50.     Moreover, for the other Pending European Proceedings, courts have granted Section 1782 discovery assistance for cases pending in France and the United Kingdom.  *See, e.g., In re Application of XPO Logistics, Inc.*, No. 15 Misc. 205 (LGS), 2017 WL 6343689 (S.D.N.Y. Dec. 11, 2017) (affirming magistrate judge's order granting discovery for use in France); *Euromepa*, 51 F.3d at 1102 (reversing district court's denial of Section 1782 discovery for use in France); *Catalyst Managerial Servs. DMCC v. Libya Africa Inv. Portfolio*, 680 F. App'x 37, 41 (2d Cir. 2017) (granting discovery for use in the United Kingdom).; *LEG Q LLC v. RSR Corp.*, No. 3:17-cv-1559-N-BN, 2017 WL 3780213 (N.D Tex. Aug. 31, 2017) (finding U.K. court would be receptive to evidence and ordering discovery would not circumvent proof gathering restrictions in shareholder derivative suit); *In re ex parte Application of Global Energy Horizons Corp.*, No. 5:15-mc-80078-PSG, 2015 U.S. Dist. LEXIS 37138 (N.D. Cal. Mar. 24, 2015) (granting discovery of Google e-mail account for use in UK proceedings);

51.     And, with respect to the Contemplated Foreign Proceedings, courts have granted Section 1782 discovery assistance for cases pending in Spain and Japan.  *See, e.g., In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998) (vacating order denying 1782 discovery that has been sought for use in Spain) *Catalyst Managerial Servs. DMCC v. Libya Africa Inv. Portfolio*, 680 F. App'x 37, 41 (2d Cir. 2017)

1   (granting discovery for use in the United Kingdom); *Akebia*, 793 F.3d 1112-13
2   (granting discovery for use in Japanese proceedings).

3       52.    The second *Intel* factor thus weighs in favor of granting Lufthansa's
4   Application.

### The Request Does Not Conceal An Attempt
### To Circumvent Foreign Proof-Gathering Restrictions

7       53.    The third *Intel* factor considers whether the foreign jurisdiction has
8   proof-gathering restrictions that might be improperly circumvented if the discovery
9   request is granted.  Germany has no such proof-gathering restrictions.  *See Intel*,
10  542 U.S. at 264-65.  As noted above, German courts generally admit the evidence
11  offered by a party without regard to its origin.  (Jaekel Decl. ¶ 32-33.)  In addition,
12  the ZPO contemplates that petitions may be filed abroad to seek evidence from
13  foreign countries.  One of Germany's leading legal commentators has specifically
14  opined that a petition under Section 1782 is an appropriate vehicle for obtaining
15  evidence under the ZPO.  (*Id.* ¶ 33.)

16      54.    Similarly, U.S. courts have authorized Section 1782 discovery
17  assistance for cases brought in France, Spain, the United Kingdom and Japan.
18  *Euromepa*, 51 F.3d at 1102; *Bayer*, 146 F.3d at 196); *Catalyst Managerial Servs.*,
19  680 F. App'x at 41; and *Akebia*, 793 F.3d at 1112-13.

20      55.    The third *Intel* factor thus weighs in favor of granting Lufthansa's
21  Application.

### The Discovery Requests Are
### Narrowly Tailored To Obtain Relevant Information

24      56.    Lufthansa has narrowly tailored its discovery requests in this
25  Application.  Lufthansa seeks discovery from Thales to establish the distribution
26  chain through which the accused products are offered for sale, sold and distributed,
27  and to determine the volume of infringing units sold in Germany and the other
28  countries where Lufthansa holds patent rights relating to the technology claimed in

APP. FOR DISCOVERY PER 28 U.S.C. § 1782

EP 145 Patent. To that end, Lufthansa seeks the documents identified in the proposed subpoena attached hereto as Attachment 4. Lufthansa will thereafter seek deposition testimony on similar topics and those that arise from the responsive documents.

57.   While Lufthansa has made every effort to propound narrowly tailored discovery requests, if these requests are deemed to be overly broad, the proper course of action is to modify the subpoena, rather than quashing it outright:

> [R]ecently, we have made the point that although American-style discovery for one party may skew foreign litigation, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright."

*Metallgesellschaft AG v. Hodapp*, 121 F.3d 77, 80 (2d Cir. 1997) (quoting *Euromepa*, 51 F.3d at 1101); *see also id.* at 78 ("We agree . . . that the district court abused its discretion in refusing discovery.").

58.   Similarly, the Seventh Circuit reversed the lower court's denial of Section 1782 discovery, finding that denying the petitioner's request outright was an abuse of discretion:

> The district court's second error was to turn down [petitioner's] discovery request flat, on the ground that compliance would be unduly burdensome to [respondent], without requiring [respondent] to negotiate with [petitioner] over cutting down the request to eliminate excessive burden and failing that to ask the district court to limit the scope of discovery . . . . If [petitioner is] asking for too much, the district court can and should cut down its request, but not to nothing, as it did. That was unreasonable, and therefore reversible.

*Biomet*, 633 F.3d at 597-98. Lufthansa stands ready and willing to cooperate with Thales to try to resolve any concerns that Thales may have about the breadth of its discovery requests.

59.   The fourth *Intel* factor thus weighs in favor of granting Lufthansa's Application.

APP. FOR DISCOVERY PER 28 U.S.C. § 1782

### The Proposed Protective Order Protects Thales's Confidentiality

60.     Thales may challenge production of the requested documents and testimony by alleging that its own information is highly confidential.  Such confidentiality concerns should not be an impediment to this Court's granting Lufthansa's Application for at least two reasons.

61.     *First*, this Court may enter a Protective Order to ensure that confidential information will be provided only to Lufthansa's counsel who have submitted to this Court's jurisdiction and not to Lufthansa's employees.  (*See* proposed Protective Order, attached hereto as Attachment 5.)  The proposed Protective Order also provides that, before Lufthansa may use a document in the Pending European Proceedings, it must give notice of its intent to Thales's counsel five (5) business days in advance.  Thales's counsel will then have an opportunity to challenge that proposed use in this Court if it believes there is an undue risk of disclosure of the confidential information.  Through this procedure, this Court can evaluate the likelihood that disclosure might occur, and balance Lufthansa's need for the information against Thales's confidentiality concerns.  The Ninth Circuit has acknowledged that protective orders of this sort sufficiently "guard against disclosure" of confidential information.  *Akebia*, 793 F.3d at 1112.

62.     *Second*, challenges to Lufthansa's proposed use should be rare because the German court files are not publicly accessible and because Germany has mechanisms to protect the confidentiality of evidence presented in their courts. (*See* Jaekel Decl. ¶ 35-36.)  Indeed, Lufthansa has previously presented material from discovery in the United States as part of the German proceedings, and AES did not have any problems with the way the German court handled the confidentiality issues.  (*See id.*)  Similar confidentiality protections exist in both France and the United Kingdom.  (*See* Bouvet Decl. ¶ 13; McColluch Decl. ¶ 8.)

63.     Thus, Thales's potential confidentiality concerns are no basis for denying this Petition.

APP. FOR DISCOVERY PER 28 U.S.C. § 1782

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

This Court should exercise its discretion in favor of Lufthansa to effectuate the twin aims of 28 U.S.C. § 1782: (i) providing efficient means of assistance to participants in international litigation in our federal courts; and (ii) encouraging foreign countries by example to provide similar means of assistance to our courts. *See Intel*, 542 U.S. at 252; *Metallgesellschaft*, 121 F.3d at 79.  Lufthansa asks this Court to consider its request promptly to ensure that responsive discovery is obtained in sufficient time to be of use in the Pending European Proceedings, and, after Thales has had an opportunity to voice any objections, to allow discovery relevant to the issues generally identified in this application, including issuing and serving subpoena in the form of Attachment 4 annexed hereto, pursuant to Rules 26, 30, 34, and 45 of the Federal Rules of Civil Procedure.  In particular, Lufthansa requests that the Court (i) set this matter for the earliest available hearing date; and, after providing Thales an opportunity to voice its objections, if any; (ii) enter an order compelling Thales to produce documents; (iii) enter a Protective Order in the form annexed hereto as Attachment 5; and (iiv) grant such other and further relief to Lufthansa as may be just and equitable.

APP. FOR DISCOVERY PER 28 U.S.C. § 1782

1   Dated this 28th day of June, 2019.

2

3                               By: */s/ Alexis A. Smith*

4                                   Lawrence D. Rosenberg
                                    (*pro hac vice application to be filed*)
5                                   JONES DAY
                                    51 Louisiana Avenue, N.W.
6                                   Washington, D.C. 20001.2113
                                    Telephone:    +1.202.879.3939
7                                   Facsimile:    +1.202.626.1700
                                    ldrosenberg@jonesday.com
8
                                    Alexis A. Smith (Cal. Bar No. 274429)
9                                   JONES DAY
                                    555 South Flower Street, Fiftieth Floor
10                                  Los Angeles, CA 90071.2452
                                    Telephone:    +1.213.489.3939
11                                  Facsimile:    +1.213.243.2539
                                    asmith@jonesday.com
12
                                Attorneys for Petitioner
13                              LUFTHANSA TECHNIK AG

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APP. FOR DISCOVERY PER 28 U.S.C. § 1782